(Slip Opinion)          OCTOBER TERM, 2007          1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## REPUBLIC OF PHILIPPINES ET AL. *v.* PIMENTEL, TEMPORARY ADMINISTRATOR OF ESTATE OF PIMENTEL, DECEASED, ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 06–1204.  Argued March 17, 2008—Decided June 12, 2008

A class action by and for human rights victims (Pimentel class) of Ferdinand Marcos, while he was President of the Republic of the Philippines (Republic), led to a nearly $2 billion judgment in a United States District Court.  The Pimentel class then sought to attach the assets of Arelma, S. A. (Arelma), a company incorporated by Marcos, held by a New York broker (Merrill Lynch).  The Republic and a Philippine commission (Commission) established to recover property wrongfully taken by Marcos are also attempting to recover this and other Marcos property.  The Philippine National Banc (PNB) holds some of the disputed assets in escrow, awaiting the outcome of pending litigation in the Sandiganbayan, a Philippine court determining whether Marcos' property should be forfeited to the Republic.  Facing claims from various Marcos creditors, including the Pimentel class, Merrill Lynch filed this interpleader action under 28 U. S. C. §1335, naming, among the defendants, the Republic, the Commission, Arelma, PNB (all petitioners here), and the Pimentel class (respondents here).  The Republic and the Commission asserted sovereign immunity under the Foreign Sovereign Immunities Act of 1976, and moved to dismiss pursuant to Federal Rule of Civil Procedure 19(b), arguing that the action could not proceed without them.  Arelma and PNB also sought a Rule 19(b) dismissal.  The District Court refused, but the Ninth Circuit reversed, holding that the Republic and the Commission are entitled to sovereign immunity and are required parties under Rule 19(a), and it entered a stay pending the Sandiganbayan litigation's outcome.  Finding that that litigation could not determine entitlement to Arelma's assets, the District Court vacated

EXHIBIT 2

2          REPUBLIC OF PHILIPPINES *v.* PIMENTEL

Syllabus

the stay and ultimately awarded the assets to the Pimentel class.
The Ninth Circuit affirmed, holding that dismissal was not war-
ranted under Rule 19(b) because, though the Republic and the Com-
mission were required parties, their claim had so little likelihood of
success on the merits that the action could proceed without them.
The court found it unnecessary to consider whether prejudice to those
entities might be lessened by a judgment or interim decree in the in-
terpleader action, found the entities' failure to obtain a judgment in
the Sandiganbayan an equitable consideration counseling against
dismissing the interpleader suit, and found that allowing the inter-
pleader case to proceed would serve the Pimentel class' interests.

*Held:*

1. Because Arelma and PNB also seek review of the Ninth Circuit's
decision, this Court need not rule on the question whether the Repub-
lic and the Commission, having been dismissed from the suit, had the
right to seek review of the decision that the suit could proceed in
their absence. As a general matter any party may move to dismiss
an action under Rule 19(b). Arelma and PNB have not lost standing
to have the judgment vacated in its entirety on procedural grounds
simply because they did not appeal, or petition for certiorari on, the
underlying merits ruling denying them the interpleaded assets.
Pp. 7–9.

2. Rule 19 requires dismissal of the interpleader action. Pp. 9–20.

(a) Under Rule 19(a), nonjoinder even of a required person does
not always result in dismissal. When joinder is not feasible, the
question whether an action should proceed turns on nonexclusive
considerations in Rule 19(b), which asks whether "in equity and good
conscience, the action should proceed among the existing parties or
should be dismissed." The joinder issue can be complex, and the
case-specific determinations involve multiple factors, some "substan-
tive, some procedural, some compelling by themselves, and some sub-
ject to balancing against opposing interests," *Provident Tradesmens
Bank & Trust Co.* v. *Patterson,* 390 U. S. 102, 119. Pp. 9–10.

(b) Here, Rule 19(a)'s application is not contested: The Republic
and the Commission are required entities. And this Court need not
decide the proper standard of review for Rule 19(b) decisions, because
the Ninth Circuit's errors of law require reversal. Pp. 10–19.

(1) The first factor directs the court to consider, in determining
whether the action may proceed, the prejudice to absent entities and
present parties in the event judgment is rendered without joinder.
Rule 19(b)(1). The Ninth Circuit gave insufficient weight to the sov-
ereign status of the Republic and the Commission in considering
whether they would be prejudiced if the case proceeded. Giving full
effect to sovereign immunity promotes the comity and dignity inter-

Syllabus

ests that contributed to the development of the immunity doctrine. See, *e.g.*, *Verlinden B. V.* v. *Central Bank of Nigeria,* 461 U. S. 480, 486. These interests are concrete here. The entities' claims arise from historically and politically significant events for the Republic and its people, and the entities have a unique interest in resolving matters related to Arelma's assets. A foreign state has a comity interest in using its courts for a dispute if it has a right to do so. Its dignity is not enhanced if other nations bypass its courts without right or good cause. A more specific affront could result if property the Republic and the Commission claim is seized by a foreign court decree. This Court has not considered the precise question presented, but authorities involving the intersection of joinder and the United States' governmental immunity, see, *e.g., Mine Safety Appliances Co.* v. *Forrestal,* 326 U. S. 371, 373–375, instruct that where sovereign immunity is asserted, and the sovereign's claims are not frivolous, dismissal must be ordered where there is a potential for injury to the absent sovereign's interests. The claims of the Republic and the Commission were not frivolous, and the Ninth Circuit thus erred in ruling on their merits. The privilege of sovereign immunity from suit is much diminished if an important and consequential ruling affecting the sovereign's substantial interest is determined, or at least assumed, by a federal court in its absence and over its objection. The Pimentel class' interest in recovering its damages is not discounted, but important comity concerns are implicated by assertion of foreign sovereign immunity. The error is not that the courts below gave too much weight to the Pimentel class' interests, but that they did not accord proper weight to the compelling sovereign immunity claim. Pp. 11–16.

   (2) The second factor is the extent to which any prejudice could be lessened or avoided by relief or measures alternative to dismissal, Rule 19(b)(2), but no alternative remedies or forms of relief have been proposed or appear to be available. As to the third factor—whether a judgment rendered without the absent party would be adequate, Rule 19(b)(3)—"adequacy" refers not to satisfaction of the Pimentel class' claims, but to the "public stake in settling disputes by wholes, whenever possible," *Provident Bank, supra,* at 111. Going forward with the action in the absence of the Republic and the Commission would not further this public interest because they could not be bound by a judgment to which they were not parties. As to the fourth factor—whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder, Rule 19(b)(4)—the Ninth Circuit made much of the tort victims' lack of an alternative forum. But Merrill Lynch, not the Pimentel class, is the plaintiff as the stakeholder in the interpleader action. See 28 U. S. C. §1335(a). The Pimentel

4        REPUBLIC OF PHILIPPINES v. PIMENTEL

Syllabus

class' interests are not irrelevant to Rule 19(b)'s equitable balance, but the Rule's other provisions are the relevant ones to consult. A dismissal on the ground of nonjoinder will not provide Merrill Lynch with a judgment determining entitlement to the assets so it could be done with the matter, but it likely would give Merrill Lynch an effective defense against piecemeal litigation by various claimants and inconsistent, conflicting judgments. Any prejudice to Merrill Lynch is outweighed by prejudice to the absent entities invoking sovereign immunity. In the usual course, the Ninth Circuit's failure to give sufficient weight to the likely prejudice to the Republic and the Commission would warrant reversal and remand for further determinations, but here, that error plus this Court's analysis under Rule 19(b)'s additional provisions require the action's dismissal. Pp. 17–20.

464 F. 3d 885, reversed and remanded.

KENNEDY, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, THOMAS, GINSBURG, BREYER, and ALITO, JJ., joined, in which SOUTER, J., joined as to all but Parts IV–B and V, and in which STEVENS, J., joined as to Part II. STEVENS, J., and SOUTER, J., filed opinions concurring in part and dissenting in part.

Cite as: 553 U. S. ____ (2008)    1

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 06–1204

## REPUBLIC OF THE PHILIPPINES, ET AL., PETITIONERS v. JERRY S. PIMENTEL, TEMPORARY ADMINISTRATOR OF THE ESTATE OF MARIANO J. PIMENTEL, DECEASED, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[June 12, 2008]

JUSTICE KENNEDY delivered the opinion of the Court.

This case turns on the interpretation and proper application of Rule 19 of the Federal Rules of Civil Procedure and requires us to address the Rule's operation in the context of foreign sovereign immunity.

This interpleader action was commenced to determine the ownership of property allegedly stolen by Ferdinand Marcos when he was the President of the Republic of the Philippines. Two entities named in the suit invoked sovereign immunity. They are the Republic of the Philippines and the Philippine Presidential Commission on Good Governance, referred to in turn as the Republic and the Commission. They were dismissed, but the interpleader action proceeded to judgment over their objection. Together with two parties who remained in the suit, the Republic and the Commission now insist it was error to allow the litigation to proceed. Under Rule 19, they contend, the action should have been dismissed once it became clear they could not be joined as parties without

2          REPUBLIC OF PHILIPPINES *v.* PIMENTEL

Opinion of the Court

their consent.

The United States Court of Appeals for the Ninth Circuit, agreeing with the District Court, held the action could proceed without the Republic and the Commission as parties. Among the reasons the Court of Appeals gave was that the absent, sovereign entities would not prevail on their claims. We conclude the Court of Appeals gave insufficient weight to the foreign sovereign status of the Republic and the Commission, and that the court further erred in reaching and discounting the merits of their claims.

I

A

When the opinion of the Court of Appeals is consulted, the reader will find its quotations from Rule 19 do not accord with its text as set out here; for after the case was in the Court of Appeals and before it came here, the text of the Rule changed. The Rules Committee advised the changes were stylistic only, see Advisory Committee's Notes on 2007 Amendment to Fed. Rule Civ. Proc. 19, 28 U. S. C. A., p. 168 (2008); and we agree. These are the three relevant stylistic changes. First, the word "required" replaced the word "necessary" in subparagraph (a). Second, the 1966 Rule set out factors in longer clauses and the 2007 Rule sets out the factors affecting joinder in separate lettered headings. Third, the word "indispensable," which had remained as a remnant of the pre-1966 Rule, is altogether deleted from the current text. Though the word "indispensable" had a lesser place in the 1966 Rule, it still had the latent potential to mislead.

As the substance and operation of the Rule both pre- and post-2007 are unchanged, we will refer to the present, revised version. The pre-2007 version is printed in the Appendix of this opinion. The current Rule states, in relevant part, as follows:

Opinion of the Court

"**Rule 19. Required Joinder of Parties.**

"**(a) Persons Required to Be Joined if Feasible.**

"**(1) Required Party.**  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

"**(A)** in that person's absence, the court cannot accord complete relief among existing parties; or

"**(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

"**(i)** as a practical matter impair or impede the person's ability to protect the interest; or

"**(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

"**(2) Joinder by Court Order.**  If a person has not been joined as required, the court must order that the person be made a party.  A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

"**(3) Venue.**  If a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party.

"**(b) When Joinder Is Not Feasible.**  If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.  The factors for the court to consider include:

"**(1)** the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

"**(2)** the extent to which any prejudice could be lessened or avoided by:

Opinion of the Court

"**(A)** protective provisions in the judgment;
"**(B)** shaping the relief; or
"**(C)** other measures;
"**(3)** whether a judgment rendered in the person's absence would be adequate; and
"**(4)** whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder."
Fed. Rules Civ. Proc. 19(a)–(b).

See also Rule 19(c) (imposing pleading requirements); Rule 19(d) (creating exception for class actions).

### B

In 1972, Ferdinand Marcos, then President of the Republic, incorporated Arelma, S. A. (Arelma), under Panamanian law. Around the same time, Arelma opened a brokerage account with Merrill Lynch, Pierce, Fenner & Smith Inc. (Merrill Lynch) in New York, in which it deposited $2 million. As of the year 2000, the account had grown to approximately $35 million.

Alleged crimes and misfeasance by Marcos during his presidency became the subject of worldwide attention and protest. A class action by and on behalf of some 9,539 of his human rights victims was filed against Marcos and his estate, among others. The class action was tried in the United States District Court for the District of Hawaii and resulted in a nearly $2 billion judgment for the class. See *Hilao* v. *Estate of Marcos*, 103 F. 3d 767 (CA9 1996). We refer to that litigation as the Pimentel case and to its class members as the Pimentel class. In a related action, the Estate of Roger Roxas and Golden Budha *[sic]* Corporation (the Roxas claimants) claim a right to execute against the assets to satisfy their own judgment against Marcos' widow, Imelda Marcos. See *Roxas* v. *Marcos*, 89 Haw. 91, 113–115, 969 P. 2d 1209, 1231–1233 (1998).

The Pimentel class claims a right to enforce its judgment by attaching the Arelma assets held by Merrill

Opinion of the Court

Lynch. The Republic and the Commission claim a right to
the assets under a 1955 Philippine law providing that
property derived from the misuse of public office is for-
feited to the Republic from the moment of misappropria-
tion. See An Act Declaring Forfeiture in Favor of the
State Any Property Found To Have Been Unlawfully
Acquired by Any Public Officer or Employee and Providing
for the Proceedings Therefor, Rep. Act No. 1379, 51:9 O. G.
4457 (June 18, 1955).

After Marcos fled the Philippines in 1986, the Commis-
sion was created to recover any property he wrongfully
took. Almost immediately the Commission asked the
Swiss Government for assistance in recovering assets—
including shares in Arelma—that Marcos had moved to
Switzerland. In compliance the Swiss Government froze
certain assets and, in 1990, that freeze was upheld by the
Swiss Federal Supreme Court. In 1991, the Commission
asked the Sandiganbayan, a Philippine court of special
jurisdiction over corruption cases, to declare forfeited to
the Republic any property Marcos had obtained through
misuse of his office. That litigation is still pending in the
Sandiganbayan.

The Swiss assets were transferred to an escrow account
set up by the Commission at the Philippine National Banc
(PNB), pending the Sandiganbayan's decision as to their
rightful owner. The Republic and the Commission re-
quested that Merrill Lynch follow the same course and
transfer the Arelma assets to an escrow account at PNB.
Merrill Lynch did not do so. Facing claims from various
Marcos creditors, including the Pimentel class, Merrill
Lynch instead filed an interpleader action under 28
U. S. C. §1335. The named defendants in the interpleader
action were, among others, the Republic and the Commis-
sion, Arelma, PNB, and the Pimentel class (the respon-
dents here).

The Pimentel case had been tried as a class action be-

fore Judge Manuel Real of the United States District
Court for the Central District of California, who was sit-
ting by designation in the District of Hawaii after the
Judicial Panel on Multidistrict Litigation consolidated the
various human rights complaints against Marcos in that
court.  See *Hilao, supra,* at 771.  Judge Real directed
Merrill Lynch to file the interpleader action in the District
of Hawaii, and he presided over the matter.

After being named as defendants in the interpleader
action, the Republic and the Commission asserted sover-
eign immunity under the Foreign Sovereign Immunities
Act of 1976 (FSIA), 28 U. S. C. §1604.  They moved to
dismiss pursuant to Rule 19(b), based on the premise that
the action could not proceed without them.  Arelma and
PNB also moved to dismiss pursuant to Rule 19(b).  With-
out addressing whether they were entitled to sovereign
immunity, Judge Real initially rejected the request by the
Republic and the Commission to dismiss the interpleader
action.  They appealed, and the Court of Appeals reversed.
It held the Republic and the Commission are entitled to
sovereign immunity and that under Rule 19(a) they are
required parties (or "necessary" parties under the old
terminology).  See *In re Republic of the Philippines,* 309
F. 3d 1143, 1149–1152 (CA9 2002).  The Court of Appeals
entered a stay pending the outcome of the litigation in the
Sandiganbayan over the Marcos assets.  See *id.,* at 1152–
1153.

After concluding that the pending litigation in the
Sandiganbayan could not determine entitlement to the
Arelma assets, Judge Real vacated the stay, allowed the
action to proceed, and awarded the assets to the Pimentel
class.  A week later, in the case initiated before the Sandi-
ganbayan in 1991, the Republic asked that court to de-
clare the Arelma assets forfeited, arguing the matter was
ripe for decision.  The Sandiganbayan has not yet ruled.

In the interpleader case the Republic, the Commission,

Opinion of the Court

Arelma, and PNB appealed the District Court's judgment in favor of the Pimentel claimants. This time the Court of Appeals affirmed. See *Merrill Lynch, Pierce, Fenner & Smith* v. *ENC Corp.*, 464 F. 3d 885 (CA9 2006). Dismissal of the interpleader suit, it held, was not warranted under Rule 19(b) because, though the Republic and the Commission were required ("necessary") parties under Rule 19(a), their claim had so little likelihood of success on the merits that the interpleader action could proceed without them. One of the reasons the court gave was that any action commenced by the Republic and the Commission to recover the assets would be barred by New York's 6-year statute of limitations for claims involving the misappropriation of public property. See N. Y. Civ. Prac. Law Ann. §213 (West Supp. 2008). The court thus found it unnecessary to consider whether any prejudice to the Republic and the Commission might be lessened by some form of judgment or interim decree in the interpleader action. The court also considered the failure of the Republic and the Commission to obtain a judgment in the Sandiganbayan— despite the Arelma share certificates having been located and held in escrow at the PNB since 1997–1998—to be an equitable consideration counseling against dismissal of the interpleader suit. The court further found it relevant that allowing the interpleader case to proceed would serve the interests of the Pimentel class, which, at this point, likely has no other available forum in which to enforce its judgment against property belonging to Marcos.

This Court granted certiorari. See 552 U. S. ___ (2007).

## II

We begin with the question we asked the parties to address when we granted certiorari: Whether the Republic and the Commission, having been dismissed from the interpleader action based on their successful assertion of sovereign immunity, had the right to appeal the District

Opinion of the Court

Court's determination under Rule 19 that the action could proceed in their absence; and whether they have the right to seek this Court's review of the Court of Appeals' judgment affirming the District Court. See *ibid.*

Respondents contend that the Republic and the Commission were not proper parties in the Court of Appeals when it reviewed the District Court's judgment allowing the action to proceed without them; and, respondents continue, the Republic and the Commission are not proper parties in the instant proceeding before us. See Brief for Respondent Pimentel 21.

Without implying that respondents are correct in saying the Republic and the Commission could neither appeal nor become parties here, we conclude we need not rule on this point. Other parties before us, Arelma and PNB, also seek review of the Court of Appeals' decision affirming the District Court. They, too, moved to dismiss the action under Rule 19(b), appealed from the denial of their motion, and are petitioners before this Court. As a general matter any party may move to dismiss an action under Rule 19(b). A court with proper jurisdiction may also consider *sua sponte* the absence of a required person and dismiss for failure to join. See, *e.g., Minnesota* v. *Northern Securities Co.*, 184 U. S. 199, 235 (1902); see also *Provident Tradesmens Bank & Trust Co.* v. *Patterson*, 390 U. S. 102, 111 (1968).

Respondents argue, however, that Arelma and PNB have no standing to raise before this Court the question whether the action may proceed in the absence of the Republic and the Commission. Arelma and PNB lost on the merits of their underlying claims to the interpleaded assets in both the District Court and the Court of Appeals. By failing to petition for certiorari on that merits ruling, respondents contend, Arelma and PNB abandoned any entitlement to the interpleaded assets and therefore lack a concrete stake in the outcome of further proceedings. We

Opinion of the Court

disagree. Dismissal of the action under Rule 19(b) would benefit Arelma and PNB by vacating the judgment denying them the interpleaded assets. A party that seeks to have a judgment vacated in its entirety on procedural grounds does not lose standing simply because the party does not petition for certiorari on the substance of the order.

### III

We turn to the question whether the interpleader action could proceed in the District Court without the Republic and the Commission as parties.

Subdivision (a) of Rule 19 states the principles that determine when persons or entities must be joined in a suit. The Rule instructs that nonjoinder even of a required person does not always result in dismissal. Subdivision (a) opens by noting that it addresses joinder "if Feasible." Where joinder is not feasible, the question whether the action should proceed turns on the factors outlined in subdivision (b). The considerations set forth in subdivision (b) are nonexclusive, as made clear by the introductory statement that "[t]he factors for the court to consider include." Fed. Rule Civ. Proc. 19(b). The general direction is whether "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." *Ibid.* The design of the Rule, then, indicates that the determination whether to proceed will turn upon factors that are case specific, which is consistent with a Rule based on equitable considerations. This is also consistent with the fact that the determination of who may, or must, be parties to a suit has consequences for the persons and entities affected by the judgment; for the judicial system and its interest in the integrity of its processes and the respect accorded to its decrees; and for society and its concern for the fair and prompt resolution of disputes. See, *e.g., Illinois Brick Co.* v. *Illinois,* 431

Opinion of the Court

U. S. 720, 737–739 (1977). For these reasons, the issue of joinder can be complex, and determinations are case specific. See, *e.g., Provident Bank, supra,* at 118–119.

Under the earlier Rules the term "indispensable party" might have implied a certain rigidity that would be in tension with this case-specific approach. The word "indispensable" had an unforgiving connotation that did not fit easily with a system that permits actions to proceed even when some persons who otherwise should be parties to the action cannot be joined. As the Court noted in *Provident Bank,* the use of "indispensable" in Rule 19 created the "verbal anomaly" of an "indispensable person who turns out to be dispensable after all." 390 U. S., at 117, n. 12. Though the text has changed, the new Rule 19 has the same design and, to some extent, the same tension. Required persons may turn out not to be required for the action to proceed after all.

In all events it is clear that multiple factors must bear on the decision whether to proceed without a required person. This decision "must be based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests." *Id.,* at 119.

### IV

We turn to Rule 19 as it relates to this case. The application of subdivision (a) of Rule 19 is not contested. The Republic and the Commission are required entities because "[w]ithout [them] as parties in this interpleader action, their interests in the subject matter are not protected." *In re Republic of Philippines,* 309 F. 3d, at 1152; see Fed. Rule Civ. Proc. 19(a)(1)(B)(i). All parties appear to concede this. The disagreement instead centers around the application of subdivision (b), which addresses whether the action may proceed without the Republic and

Opinion of the Court

the Commission, given that the Rule requires them to be parties.

We have not addressed the standard of review for Rule 19(b) decisions. The case-specific inquiry that must be followed in applying the standards set forth in subdivision (b), including the direction to consider whether "in equity and good conscience" the case should proceed, implies some degree of deference to the district court. In this case, however, we find implicit in the District Court's rulings, and explicit in the opinion of the Court of Appeals, errors of law that require reversal. Whatever the appropriate standard of review, a point we need not decide, the judgment could not stand. Cf. *Koon* v. *United States*, 518 U. S. 81, 99–100 (1996) (a court "by definition abuses its discretion when it makes an error of law").

The Court of Appeals erred in not giving the necessary weight to the absent entities' assertion of sovereign immunity. The court in effect decided the merits of the Republic and the Commission's claims to the Arelma assets. Once it was recognized that those claims were not frivolous, it was error for the Court of Appeals to address them on their merits when the required entities had been granted sovereign immunity. The court's consideration of the merits was itself an infringement on foreign sovereign immunity; and, in any event, its analysis was flawed. We discuss these errors first in the context of how they affected the Court of Appeals' analysis under the first factor of Rule 19(b). We then explain that the outcome suggested by the first factor is confirmed by our analysis under the other provisions of Rule 19(b). The action may not proceed.

A

As to the first Rule 19(b) factor—the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties, Fed. Rule Civ.

Opinion of the Court

Proc. 19(b)(1)—the judgment of the Court of Appeals is incorrect.

In considering whether the Republic and the Commission would be prejudiced if the action were to proceed in their absence, the Court of Appeals gave insufficient weight to their sovereign status. The doctrine of foreign sovereign immunity has been recognized since early in the history of our Nation. It is premised upon the "perfect equality and absolute independence of sovereigns, and th[e] common interest impelling them to mutual intercourse." *Schooner Exchange* v. *McFaddon,* 7 Cranch 116, 137 (1812). The Court has observed that the doctrine is designed to "give foreign states and their instrumentalities some protection from the inconvenience of suit," *Dole Food Co.* v. *Patrickson,* 538 U. S. 468, 479 (2003).

The privilege is codified by federal statute. FSIA, 28 U. S. C. §§1330, 1602–1611, provides that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607," absent existing international agreements to the contrary. §1604; see *Verlinden B. V.* v. *Central Bank of Nigeria,* 461 U. S. 480, 486–489 (1983) (explaining the history of the doctrine's codification). Exceptions to the general principle of foreign sovereign immunity are contained in §§1605–1607 of the statute. They are inapplicable here, or at least the parties do not invoke them. Immunity in this case, then, is uncontested; and pursuant to the Court of Appeals' earlier ruling on the issue, the District Court dismissed the Republic and the Commission from the action on this ground.

The District Court and the Court of Appeals failed to give full effect to sovereign immunity when they held the action could proceed without the Republic and the Commission. Giving full effect to sovereign immunity promotes the comity interests that have contributed to the development of the immunity doctrine. See, *e.g., id.,* at

Opinion of the Court

486 ("[F]oreign sovereign immunity is a matter of grace and comity"); *National City Bank of N. Y.* v. *Republic of China*, 348 U. S. 356, 362, and n. 7 (1955) (foreign sovereign immunity derives from "standards of public morality, fair dealing, reciprocal self-interest, and respect for the 'power and dignity' of the foreign sovereign" (quoting *Schooner Exchange, supra*, at 136–137, 143–144)).

Comity and dignity interests take concrete form in this case. The claims of the Republic and the Commission arise from events of historical and political significance for the Republic and its people. The Republic and the Commission have a unique interest in resolving the ownership of or claims to the Arelma assets and in determining if, and how, the assets should be used to compensate those persons who suffered grievous injury under Marcos. There is a comity interest in allowing a foreign state to use its own courts for a dispute if it has a right to do so. The dignity of a foreign state is not enhanced if other nations bypass its courts without right or good cause. Then, too, there is the more specific affront that could result to the Republic and the Commission if property they claim is seized by the decree of a foreign court. Cf. *Republic of Mexico* v. *Hoffman*, 324 U. S. 30, 35–36 (1945) (pre-FSIA, common-law doctrine dictated that courts defer to executive determination of immunity because "[t]he judicial seizure" of the property of a friendly state may be regarded as "an affront to its dignity and may . . . affect our relations with it").

Though this Court has not considered a case posing the precise question presented here, there are some authorities involving the intersection of joinder and the governmental immunity of the United States. See, *e.g., Mine Safety Appliances Co.* v. *Forrestal*, 326 U. S. 371, 373–375 (1945) (dismissing an action where the Under Secretary of the Navy was sued in his official capacity, because the Government was a required entity that could not be joined

when it withheld consent to be sued); *Minnesota* v. *United States*, 305 U. S. 382, 386–388 (1939) (dismissing the action for nonjoinder of a required entity where the United States was the owner of the land in question but had not consented to suit). The analysis of the joinder issue in those cases was somewhat perfunctory, but the holdings were clear: A case may not proceed when a required-entity sovereign is not amenable to suit. These cases instruct us that where sovereign immunity is asserted, and the claims of the sovereign are not frivolous, dismissal of the action must be ordered where there is a potential for injury to the interests of the absent sovereign.

The Court of Appeals accordingly erred in undertaking to rule on the merits of the Republic and the Commission's claims. There may be cases where the person who is not joined asserts a claim that is frivolous. In that instance a court may have leeway under both Rule 19(a)(1), defining required parties, and Rule 19(b), addressing when a suit may go forward nonetheless, to disregard the frivolous claim. Here, the claims of the absent entities are not frivolous; and the Court of Appeals should not have proceeded on the premise that those claims would be determined against the sovereign entities that asserted immunity.

The Court of Appeals determined that the claims of the Republic and the Commission as to the assets would not succeed because a suit would be time barred in New York. This is not necessarily so. If the Sandiganbayan rules that the Republic owns the assets or stock of Arelma because Marcos did not own them and the property was forfeited to the Republic under Philippine law, then New York misappropriation rules might not be the applicable law. For instance, the Republic and the Commission, standing in for Arelma based upon the Sandiganbayan's judgment, might not pursue a misappropriation of public property suit, as the Court of Appeals assumed they would. They

Opinion of the Court

might instead, or in the alternative, file suit for breach of contract against Merrill Lynch. They would argue the statute of limitations would start to run if and when Merrill Lynch refused to hand over the assets. See N. Y. Civ. Prac. Law Ann. §213 (West Supp. 2008); *Ely-Cruikshank Co.* v. *Bank of Montreal*, 81 N. Y. 2d 399, 402, 615 N. E. 2d 985, 986 (1993) ("In New York, a breach of contract cause of action accrues at the time of the breach"). Or the Republic and the Commission might bring an action either in state or federal court to enforce the Sandiganbayan's judgment. See 1 Restatement (Third) of Foreign Relations Law of the United States §482, Comment *a* (1986) (jurisdiction of foreign court rendering judgment is presumed); *id.,* at Comment *d* (providing exceptions not relevant here); see also 28 U. S. C. §2467(c) (providing for enforcement of foreign forfeiture judgments in certain circumstances). Merrill Lynch makes arguments why these actions would not succeed, see Brief for Merrill Lynch as *Amicus Curiae* 26–27, to which the Republic, the Commission, and the United States respond, see Reply Brief for Petitioners 14–18; Brief for United States as *Amicus Curiae* 24–28. We need not seek to predict the outcomes. It suffices that the claims would not be frivolous.

As these comments indicate, Rule 19 cannot be applied in a vacuum, and it may require some preliminary assessment of the merits of certain claims. For example, the Rule directs a court, in determining who is a required person, to consider whether complete relief can be afforded in their absence. See Fed. Rule Civ. Proc. 19(a)(1)(A). Likewise, in the Rule 19(b) inquiry, a court must examine, to some extent, the claims presented and the interests likely to be asserted both by the joined parties and the absent entities or persons. Here, however, it was improper to issue a definitive holding regarding a nonfrivolous, substantive claim made by an absent, required entity

Opinion of the Court

that was entitled by its sovereign status to immunity from suit. That privilege is much diminished if an important and consequential ruling affecting the sovereign's substantial interest is determined, or at least assumed, by a federal court in the sovereign's absence and over its objection.

As explained above, the decision to proceed in the absence of the Republic and the Commission ignored the substantial prejudice those entities likely would incur. This most directly implicates Rule 19(b)'s first factor, which directs consideration of prejudice both to absent persons and those who are parties. We have discussed the absent entities. As to existing parties, we do not discount the Pimentel class' interest in recovering damages it was awarded pursuant to a judgment. Furthermore, combating public corruption is a significant international policy. The policy is manifested in treaties providing for international cooperation in recovering forfeited assets. See, *e.g.,* United Nations Convention Against Corruption, G. A. Res. 5814, chs. IV and V, U. N. Doc. A/RES/58/4, pp. 22, 32 (Dec. 11, 2003) (reprinted in 43 I. L. M. 37 (2004)); Treaty on Mutual Legal Assistance in Criminal Matters Art. 16, Nov. 13, 1994, S. Treaty Doc. No. 104–18 (1995). This policy does support the interest of the Pimentel class in recovering damages awarded to it. But it also underscores the important comity concerns implicated by the Republic and the Commission in asserting foreign sovereign immunity. The error is not that the District Court and the Court of Appeals gave too much weight to the interest of the Pimentel class, but that it did not accord proper weight to the compelling claim of sovereign immunity.

Based on these considerations we conclude the District Court and the Court of Appeals gave insufficient weight to the likely prejudice to the Republic and the Commission should the interpleader proceed in their absence.

Opinion of the Court

B

As to the second Rule 19(b) factor—the extent to which any prejudice could be lessened or avoided by relief or measures alternative to dismissal, Fed. Rule Civ. Proc. 19(b)(2)—there is no substantial argument to allow the action to proceed. No alternative remedies or forms of relief have been proposed to us or appear to be available. See 7 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure §1608, pp. 106–110 (3d ed. 2001) (collecting cases using alternative forms of relief, including the granting of money damages rather than specific performance, the use of declaratory judgment, and the direction that payment be withheld pending suits against the absent party). If the Marcos estate did not own the assets, or if the Republic owns them now, the claim of the Pimentel class likely fails; and in all events, if there are equally valid but competing claims, that too would require adjudication in a case where the Republic and the Commission are parties. See *State Farm Fire & Casualty Co.* v. *Tashire*, 386 U. S. 523, 534, and n. 16 (1967); *Russell* v. *Clark's Executors*, 7 Cranch 69, 98–99 (1812) (Marshall, C. J.); *Wichita & Affiliated Tribes of Okla.* v. *Hodel*, 788 F. 2d 765, 774 (CADC 1986) ("Conflicting claims by beneficiaries to a common trust present a textbook example of a case where one party may be severely prejudiced by a decision in his absence" (citing *Williams* v. *Bankhead*, 19 Wall. 563, 570–571 (1874))).

C

As to the third Rule 19(b) factor—whether a judgment rendered without the absent party would be adequate, Fed. Rule Civ. Proc. 19(b)(3)—the Court of Appeals understood "adequacy" to refer to satisfaction of the Pimentel class' claims. But adequacy refers to the "public stake in settling disputes by wholes, whenever possible." *Provident Bank*, 390 U. S., at 111. This "social interest in the effi-

Opinion of the Court

cient administration of justice and the avoidance of multiple litigation" is an interest that has "traditionally been thought to support compulsory joinder of absent and potentially adverse claimants." *Illinois Brick Co.,* 431 U. S., at 737–738. Going forward with the action without the Republic and the Commission would not further the public interest in settling the dispute as a whole because the Republic and the Commission would not be bound by the judgment in an action where they were not parties.

### D

As to the fourth Rule 19(b) factor—whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder, Fed. Rule Civ. Proc. 19(b)(4)—the Court of Appeals made much of what it considered the tort victims' lack of an alternative forum should this action be dismissed. This seems to assume the plaintiff in this interpleader action was the Pimentel class. It is Merrill Lynch, however, that has the statutory status of plaintiff as the stakeholder in the interpleader action.

It is true that, in an interpleader action, the stakeholder is often neutral as to the outcome, while other parties press claims in the manner of a plaintiff. That is insufficient, though, to overcome the statement in the interpleader statute that the stakeholder is the plaintiff. See 28 U. S. C. §1335(a) (conditioning jurisdiction in part upon whether "the plaintiff has deposited such money or property" at issue with the district court or has "given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper"). We do not ignore that, in context, the Pimentel class (and indeed all interpleader claimants) are to some extent comparable to the plaintiffs in noninterpleader cases. Their interests are not irrelevant to the Rule 19(b) equitable balance; but the other provisions of the Rule are the relevant ones to consult.

Opinion of the Court

Merrill Lynch, as the stakeholder, makes the point that if the action is dismissed it loses the benefit of a judgment allowing it to disburse the assets and be done with the matter. Dismissal of the action, it urges, leaves it without an adequate remedy, for it "could potentially be forced . . . to defend lawsuits by the various claimants in different jurisdictions, possibly leading to inconsistent judgments." Brief for Merrill Lynch as *Amicus Curiae* 14. A dismissal of the action on the ground of nonjoinder, however, will protect Merrill Lynch in some respects. That disposition will not provide Merrill Lynch with a judgment determining the party entitled to the assets, but it likely would provide Merrill Lynch with an effective defense against piecemeal litigation and inconsistent, conflicting judgments. As matters presently stand, in any later suit against it Merrill Lynch may seek to join the Republic and the Commission and have the action dismissed under Rule 19(b) should they again assert sovereign immunity. Dismissal for nonjoinder to some extent will serve the purpose of interpleader, which is to prevent a stakeholder from having to pay two or more parties for one claim.

Any prejudice to Merrill Lynch in this regard is outweighed by prejudice to the absent entities invoking sovereign immunity. Dismissal under Rule 19(b) will mean, in some instances, that plaintiffs will be left without a forum for definitive resolution of their claims. But that result is contemplated under the doctrine of foreign sovereign immunity. See, *e.g.*, *Verlinden*, 461 U. S., at 497 ("[I]f a court determines that none of the exceptions to sovereign immunity applies, the plaintiff will be barred from raising his claim in any court in the United States").

V

The Court of Appeals' failure to give sufficient weight to the likely prejudice to the Republic and the Commission should the interpleader proceed in their absence would, in

Opinion of the Court

the usual course, warrant reversal and remand for further proceedings.  In this case, however, that error and our further analysis under the additional provisions of Rule 19(b) lead us to conclude the action must be dismissed. This leaves the Pimentel class, which has waited for years now to be compensated for grievous wrongs, with no immediate way to recover on its judgment against Marcos. And it leaves Merrill Lynch, the stakeholder, without a judgment.

The balance of equities may change in due course.  One relevant change may occur if it appears that the Sandiganbayan cannot or will not issue its ruling within a reasonable period of time.  Other changes could result when and if there is a ruling.  If the Sandiganbayan rules that the Republic and the Commission have no right to the assets, their claims in some later interpleader suit would be less substantial than they are now.  If the ruling is that the Republic and the Commission own the assets, then they may seek to enforce a judgment in our courts; or consent to become parties in an interpleader suit, where their claims could be considered; or file in some other forum if they can obtain jurisdiction over the relevant persons.  We do note that if Merrill Lynch, or other parties, elect to commence further litigation in light of changed circumstances, it would not be necessary to file the new action in the District Court where this action arose, provided venue and jurisdictional requirements are satisfied elsewhere.  The present action, however, may not proceed.

*          *          *

The judgment of the Court of Appeals for the Ninth Circuit is reversed, and the case is remanded with instructions to order the District Court to dismiss the interpleader action.

*It is so ordered.*

Appendix to opinion of the Court

APPENDIX

The Court of Appeals issued its decision before the 2007
Amendments to Rule 19(b) became effective.  See *Merrill
Lynch, Pierce, Fenner & Smith* v. *ENC Corp.*, 464 F. 3d
885, 891 (CA9 2006).  The text of the Rule before those
changes were adopted is as follows:

"**Rule 19.   Joinder of Persons Needed for Just
Adjudication**

"**(a) Persons to be Joined if Feasible.**  A person
who is subject to service of process and whose joinder
will not deprive the court of jurisdiction over the sub-
ject matter of the action shall be joined as a party in
the action if (1) in the person's absence complete relief
cannot be accorded among those already parties, or (2)
the person claims an interest relating to the subject of
the action and is so situated that the disposition of the
action in the person's absence may (i) as a practical
matter impair or impede the person's ability to protect
that interest or (ii) leave any of the persons already
parties subject to a substantial risk of incurring dou-
ble, multiple, or otherwise inconsistent obligations by
reason of the claimed interest. If the person has not
been so joined, the court shall order that the person be
made a party. If the person should join as a plaintiff
but refuses to do so, the person may be made a defen-
dant, or, in a proper case, an involuntary plaintiff. If
the joined party objects to venue and joinder of that
party would render the venue of the action improper,
that party shall be dismissed from the action.

"**(b) Determination by Court Whenever Join-
der not Feasible.**  If a person as described in subdi-
vision (a)(1)–(2) hereof cannot be made a party, the
court shall determine whether in equity and good con-
science the action should proceed among the parties

before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

"**(c) Pleading Reasons for Nonjoinder.** A pleading asserting a claim for relief shall state the names, if known to the pleader, of any persons as prescribed in subdivision (a)(1)–(2) hereof who are not joined, and the reasons why they are not joined.

"**(d) Exception of Class Actions.**   This rule is subject to the provisions of Rule 23."

Opinion of STEVENS, J.

# SUPREME COURT OF THE UNITED STATES

No. 06–1204

REPUBLIC OF THE PHILIPPINES, ET AL., PETI-
TIONERS *v.* JERRY S. PIMENTEL, TEMPORARY
ADMINISTRATOR OF THE ESTATE OF MARIANO J.
PIMENTEL, DECEASED, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[June 12, 2008]

JUSTICE STEVENS, concurring in part and dissenting in
part.

While I join Part II of the Court's opinion holding that
we have jurisdiction to review the Court of Appeals' deci-
sion and agree that we should not affirm the Court of
Appeals' judgment on the merits of its analysis under Rule
19 of the Federal Rules of Civil Procedure, I believe the
appropriate disposition of this case is to reverse and re-
mand for further proceedings. The District Court and the
Ninth Circuit erred by concluding that the New York
statute of limitations provides a virtually insuperable
obstacle to petitioners' recovery of the Arelma, S. A., as-
sets, and I therefore agree that this Court should reverse.
I would not, however, give near-dispositive effect to the
Republic of the Philippines (Republic) and the Philippine
Presidential Commission on Good Governance's (Commis-
sion) status as sovereign entities, as the Court does in
ordering outright dismissal of the case.

In my judgment, the Court of Appeals should either
order the District Judge to stay further proceedings pend-
ing a reasonably prompt decision of the Sandiganbayan or
order the case reassigned to a different District Judge to
conduct further proceedings. There is, of course, a risk of

2          REPUBLIC OF PHILIPPINES *v.* PIMENTEL

Opinion of STEVENS, J.

unfairness in conducting such proceedings without the participation of petitioners. But it is a risk that they can avoid by waiving their sovereign immunity, and the record provides a basis for believing that they would do so if the case proceeded before a different judge.

The Republic did not invoke its sovereign immunity until after the District Court denied its motion seeking dismissal or transfer for improper venue, dismissal on act of state grounds, or recusal of the District Judge. App. 9; *id.,* at 2–3 (docket entries). In support of that motion they advanced a factual basis for suspecting that the District Judge's impartiality could be questioned. Memorandum of Law in Support of the Motions to Dismiss, Transfer or Stay, and For Recusal 23–28 in Civ. No. CV00–595MLR (D. Haw.). These facts demonstrate that the District Judge would likely "have substantial difficulty in putting out of his or her mind previously-expressed views." *California* v. *Montrose Chemical Corp. of California,* 104 F. 3d 1507, 1521 (CA9 1997) (providing the standard for when the Ninth Circuit will reassign a case; internal quotation marks omitted).

It appears, for example, that the District Judge summoned an attorney representing Merrill Lynch to a meeting in chambers in Los Angeles on September 11, 2000, after learning that the Republic and the Commission sought to obtain the Arelma funds from Merrill Lynch. During these proceedings, the District Judge directed Merrill Lynch to file an interpleader action before him in the District of Hawaii and to deposit the Arelma funds with the court, despite the attorney's argument that New York would likely be the more appropriate forum. See *ante,* at 6; Tr. 6 (Sept. 11, 2000). Merrill Lynch filed the interpleader on September 14, 2000, and the District Judge sealed the file, making it difficult for other parties to determine the status of the proceedings. See Affidavit of Richard A. Martin in Support of the Motions to Dismiss,

Opinion of STEVENS, J.

Transfer, or Stay Submitted by the Republic of the Philippines and the Presidential Commission on Good Government in Civ. No. CV00–595MLR (D. Haw.), ¶6–7, 11. These actions bespeak a level of personal involvement and desire to control the Marcos proceedings that create at least a colorable basis for the Republic and the Commission's concern about the District Judge's impartiality.

Furthermore, following the Republic and the Commission's motion to dismiss the action on sovereign immunity grounds, the District Judge decided that they were not "real parties in interest." See *In re Republic of Philippines*, 309 F. 3d 1143, 1148 (CA9 2002). The Ninth Circuit reversed and directed the District Judge to enter a stay, *id.*, at 1153; the District Court did so, but vacated the stay within months. While the District Court's decision to do so was not without some basis, it presumably increased concern about the possibility that the District Judge would not fairly consider the Republic's position on the merits.

Upon reassignment, the question whether to dismiss the case, to stay the proceedings, or to require the Republic to choose between asserting its sovereign immunity and defending on the merits would be open. The District Judge might wish to hold a hearing to determine whether the Republic and the Commission have a substantial argument that the Republic owned the disputed assets when they were conveyed to Arelma in 1972. While the Court assumes that the Republic's interest in the Arelma assets is "not frivolous," *ante*, at 14, on this record, it is not clear whether the Republic has a sufficient claim to those assets to preclude their recovery by judgment creditors of Marcos. The Republic's claim to disputed assets may be meritless for reasons unrelated to the potential statute of limitations.

Further, in conducting the balancing inquiry mandated by Rule 19, as interpreted by Justice Harlan's opinion for the Court in *Provident Tradesmens Bank & Trust Co.* v.

4          REPUBLIC OF PHILIPPINES *v.* PIMENTEL

Opinion of STEVENS, J.

*Patterson*, 390 U. S. 102 (1968), I would conclude that several facts specific to this case suggest that the Republic and the Commission's sovereign interests should be given less weight than in the ordinary case. First, in all events, the Republic and the Commission must take affirmative steps in United States courts (or possibly invoke the assistance of the Attorney General to do so, see Brief for United States as *Amicus Curiae* 27) *at some point* in order to recover the assets held in the United States. Thus, the sovereign interest implicated here is not of the same magnitude as when a sovereign faces liability; the Republic's interest is in choosing the most convenient venue and time for the suit to proceed.

Second, in the past two decades, the Republic has participated in other proceedings involving Marcos' assets in our courts without interposing any objection. Indeed, in 1987 it filed an *amicus* brief with the Ninth Circuit in the underlying consolidated class action that led to the entry of respondents' judgment against Marcos; in that brief the Republic urged the Ninth Circuit to reverse the District Judge's dismissal of two of the cases (later consolidated) under the act of state doctrine and "to allow the Plaintiffs in those two cases to present their evidence of gross human rights violations against Ferdinand Marcos and to pursue justice in U. S. District Court." App. A to Brief for Respondent Pimentel RA–1.

This was the Republic's position notwithstanding the fact that any recovery would come from a judgment against Marcos' assets—assets that the Republic and the Commission now claim to have owned in full from the moment Marcos acquired them. See, *e.g.,* Brief for Republic in Nos. 04–16401, 04–16503, and 04–16538 (CA9), p. 9 ("Under Philippine law, assets resulting from the misuse of public office, bribery, corruption, and other such crimes by public officials are forfeit to the Republic from the moment such assets are generated"); Pet. for Republic in

Cite as: 553 U. S. ____ (2008)    5

Opinion of STEVENS, J.

No. 0141 (Sandiganbayon) (filed 1991) (seeking forfeiture of a large number of Marcos assets). Even if the Republic believed that Marcos might have some personal assets that were not ill gotten, under the Republic's theory that amount could not possibly have approached the judgment respondents received. Either the Republic was encouraging futile and purely symbolic litigation, or the Republic believed that other creditors would have access to at least a portion of Marcos' vast assets.

In sum, I am persuaded that the Court's judgment today represents a more "inflexible approach" than the Rule contemplates. *Provident,* 390 U. S., at 107. All parties have an interest in the prompt resolution of the disposition of the Arelma assets. A remand would allow a new judge to handle the matter in an expeditious fashion rather than requiring a brand new proceeding. The Court suggests that Merrill Lynch may file in another District Court—presumably in New York—if it seeks to commence further litigation. See *ante,* at 20. While this solution would put the matter before another District Judge, it requires the initiation of a new proceeding that may unnecessarily delay the final resolution.

Accordingly, I respectfully dissent.

Cite as: 553 U. S. ____ (2008)    1

Opinion of SOUTER, J.

# SUPREME COURT OF THE UNITED STATES

—————

No. 06–1204

—————

REPUBLIC OF THE PHILIPPINES, ET AL., PETI-
TIONERS v. JERRY S. PIMENTEL, TEMPORARY
ADMINISTRATOR OF THE ESTATE OF MARIANO J.
PIMENTEL, DECEASED, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[June 12, 2008]

JUSTICE SOUTER, concurring in part and dissenting in
part.

I join all but Parts IV–B and V of the Court's opinion. I
differ as to relief because a conclusion of the matter pend-
ing before the Sandiganbayan may simplify the issues
raised in this case and render one disposition or another
more clearly correct. I would therefore vacate the judg-
ment and remand for a stay of proceedings for a reason-
able time to await a decree of the Philippine court. If it
should appear later that no such decree can be expected,
the Court of Appeals could decide on the next step in light
of the Court's opinion. For reasons given by JUSTICE
STEVENS, I would order that any further proceedings in
the District Court be held before a judge fresh to the case.